NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILFREDO RODRIGUEZ, : | |
| : | |
| Petitioner, : | Civ. Action No. 18-15234 (CCC) |
| : | |
| v. : | |
| : | **OPINION** |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |
| : | |

**CECCHI**, District Judge:

Presently before the Court is Petitioner Wilfredo Rodriguez's ("Petitioner") motion to vacate his sentence. ECF No. 1. Following an order to answer, the Government filed a response to the motion (ECF No. 14), to which Petitioner replied. ECF No. 15. For the reasons discussed below, Petitioner's motion to vacate his sentence is denied, and Petitioner is denied a certificate of appealability.

**I. BACKGROUND**

On October 26, 2016, as part of a Drug Enforcement Administration ("DEA") investigation into drug trafficking and money laundering, agents entered 152 Mount Pleasant Avenue in Newark, New Jersey in order to perform a search of apartment 208. ECF No. 16–1 (Presentence Investigation Report or "PSR") at ¶ 8-9.[1] After the door to that apartment was opened, the agents noticed "a strong chemical odor" indicative of cocaine, as well as drug paraphernalia and white and brown powdery substances that appeared to be drugs. *Id.* After the occupant told the agents

---

[1] There is an updated Presentence Investigation Report dated November 7, 2017 to address changes agreed to by the parties. These changes did not alter the recitation cited herein.

1

that apartment 208 belonged to Petitioner, Petitioner exited from apartment 207 located across the hallway. *Id.* at ¶ 10. Petitioner told the agents that both apartments and their contents belonged to Petitioner, and agreed to speak with the officers and allowed them to search the apartments. *Id*. This search ultimately resulted in the discovery of a hidden compartment in apartment 208 containing considerable drug quantities and a firearm. *Id.* at ¶ 11–12. According to the agents involved, Petitioner was given *Miranda* warnings and waived his *Miranda* rights prior to giving the statements regarding his knowledge and possession of the apartment. ECF No. 16–2 at 2. Following the search, Petitioner was taken into custody, and ultimately chose to cooperate. *Id.* He again was alleged by agents to have waived his *Miranda* rights, and did sign a *Miranda* waiver card, *see* ECF No. 16–4, and provided further information regarding the drug activity in apartment 208.

Following these initial statements, Petitioner hired Howard Brownstein to represent him in the resulting criminal matter as Brownstein had previously represented him in a prior matter. ECF No. 16–5. According to Brownstein, Petitioner expressed a desire to continue to cooperate and seek a plea deal with a reduced sentence. *Id.* at 3-5. This cooperation ultimately bore fruit and resulted in Petitioner being offered and accepting a plea deal including a sentencing stipulation to a sentence of between 10 and 13 years' imprisonment on three charges – two drug possession charges and one weapons charge. *See* ECF No. 16–6 at 2-4.

On April 7, 2017, Petitioner appeared before this Court for a plea hearing. At that hearing, Petitioner was informed of the mandatory minimum and maximum sentences he faced on each of the three charges to which he was agreeing to plead guilty, including a ten year minimum for the first drug offense, a five year minimum on the second, and a mandatory consecutive sentence of at least five years on the weapons offense. ECF No. 16–6 at 22–23. Petitioner was informed that

his sentence would be the result of this Court's discretion after consultation with the applicable sentencing guidelines. *Id.* at 23–24. He was further advised that any estimates or promises he may have received from counsel would not provide a basis for withdrawing his plea if he received a sentence more onerous than that suggested by counsel, and was informed of all of the rights he was waiving by entering a plea of guilty. *Id.* at 18–20. As part of his plea, Petitioner confirmed that he understood each of the rights he was waiving (*id.* at 18–20, 26–29), that he had received no promises other than those contained in the plea agreement as to the sentence he was to receive (*id.* at 12), that he understood the mandatory minimum and maximum sentences to which he was exposed, the applicability of the guidelines, and this Court's discretionary role in sentencing him. *Id.* at 22–25. Petitioner also admitted his guilt to the charged offenses, including his control of apartment 208, and his knowledge of the drugs and weapon found within the apartment. *Id.* at 29-32.

Following his guilty plea, this Court sentenced Petitioner on November 7, 2017. At that hearing, defense counsel, without opposition from the Government, successfully objected to the PSR's guidelines calculation, and Petitioner received from the Government a 5K motion for a downward departure from the sentencing guidelines based on his cooperation with the Government. ECF No. 16–7. As a result of Petitioner's plea and the Government's 5K motion, this Court sentenced Petitioner to 108 months imprisonment. This was well below the sentencing guideline range, the parties' stipulated range of 120 months to 156 months, and the applicable statutory mandatory minimums. *Id.* Petitioner's sentence provided 87 months imprisonment on each of the two drug charges to be served concurrently with each other, and 21 months on the weapons charge to be served consecutively to the terms imposed on the drug charges to the extent

necessary to produce a total term of 108 months. *Id.* at 16–17. Petitioner thereafter filed his current motion to vacate his sentence. ECF No. 1.

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. Analysis

#### 1. No evidentiary hearing is necessary in this matter

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's

4

personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. Because Petitioner's claims provide no basis for relief for the reasons expressed below, no evidentiary hearing is necessary in this matter.

### 2. Petitioners' Ineffective Assistance of Counsel claims

In his motion to vacate his sentence, Petitioner raises two claims of ineffective assistance of counsel. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

5

> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81.

In his first ineffective assistance of counsel claim, Petitioner argues that his plea counsel was constitutionally deficient in allegedly advising him that the "statutory minimum sentences would be removed"[2] following his guilty plea, leading Petitioner to believe he would receive a much lighter sentence than that which he received at sentencing. Criminal defendants have a "Sixth Amendment right to counsel, [which] extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To show that counsel's ineffectiveness robbed him of that right and warrants reversal of his conviction, such a defendant must first show that counsel's representation "fell below an objective standard of reasonablenss." *Id.* at 163. In addressing a

---

[2] Petitioner faced mandatory minimums of ten years on the first offense to which he pled guilty, five years on the second offense to which he pled guilty, and an additional minimum term of five years to run consecutively on the third offense to which he pled guilty. Petitioner was ultimately sentenced to 87 months imprisonment on each of the first two charges, and 21 months on the third charge to be served consecutively for a term totaling 108 months. Thus, Plaintiff received a sentence far below the standard statutory minimums, the sentencing guidelines, and the stipulated plea.

guilty plea, counsel is required to provide a defendant with sufficient information that he can "make a reasonably informed decision whether to accept a plea offer," which will generally require counsel to discuss with a petitioner the facts of his case, his likelihood of conviction, and his comparative sentencing exposure at trial and through a plea. *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013); *see also Lafler*, 566 U.S. at 163; *Hill v. Lockart*, 474 U.S. 52, 57-58 (1985). An "erroneous sentencing prediction by counsel[, however,] is not ineffective assistance of counsel where . . . an adequate plea hearing is conducted. " *Bui*, 795 F.3d at 367 (quoting *Shedrick*, 493 F.3d at 299).

      Here, Petitioner alleges that counsel proved ineffective in suggesting to him that, should he plead guilty, the mandatory minimum sentences applicable to his crimes would be removed, and, presumably, he would receive a sentence below those minimums. Putting aside the fact that this is in essence what ultimately transpired, Petitioner's assertion of an alleged promised lower sentence from plea counsel is insufficient based on the facts at preseent. This Court conducted an extensive and complete plea hearing in this matter, during which Petitioner confirmed that he had not been promised any sentence benefits not contained in his plea agreement (ECF No. 16–6 at 12), that he understood that this Court would decide his ultimate sentence and that he understood both the applicable statutory minimums, the guidelines, the Court's discretion at sentencing, and the terms to which he had agreed in his plea agreement, which promised only a ten to thirteen year sentence. *Id.* at 11–12, 18–29. Petitioner stated to this Court that he had not received any other promises, that he understood that any estimates counsel had given him were not binding and that only this Court would determine his ultimate sentence. *Id.* at 12, 23–24. Petitioner's sworn responses and representations regarding his prospective sentence made at his plea hearing severely undercut his current claims, as they are entitled to a strong presumption of validity that Petitioner cannot overcome with the vague allegations of counsel's sentencing promises provided in Petitioner's

motion. *See Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977). Likewise, this Court conducted a thorough and complete plea colloquy during which Plaintiff confirmed his understanding of the plea agreement, the mandatory minimums he faced, and this Court's discretion. *See* ECF No. 16–6. That counsel may have made promises, notwithstanding Petitioner's presumptively valid statement to the contrary during the plea hearing, is insufficient to support a claim of ineffective assistance of counsel. *Bui*, 795 F.3d at 367; *Shedrick*, 493 F.3d at 299. Thus, in light of Petitioner's clear statements to this Court at the plea hearing which Petitioner has failed to show should not be presumed valid and truthful, and in light of the fact that counsel's alleged promises cannot serve as a basis for relief in light of the thorough plea hearing held in this matter, Petitioner's first claim sets forth no valid basis for relief and is denied.

In his second and final claim, Petitioner asserts that his plea counsel was ineffective in failing to fully investigate two potential defenses. Petitioner posits that he may have been able to defend his charges by alleging that he was an "innocent landlord" not responsible for the drugs on his property, and that some evidence against Petitioner should be suppressed on account of a *Miranda* violation. In his motion, however, Petitioner fails to detail what information such an investigation would have produced, and instead relies on his own assertion that such an investigation *may* have provided useful information, or *may* have produced evidence which could have been used to argue *Miranda* issues, and thus *may* have provided an alternative to pleading guilty. As one court in this District has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of

8

constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Here, Petitioner has not demonstrated what the investigations he now wishes counsel had performed would have produced. Although Petitioner speculates that an investigation *may* have produced an "innocent landlord" defense, and "may" have presented a basis for a *Miranda* challenge, he does not detail what information counsel would have discovered, nor shown that any

9

such investigation would have produced any information of real value.  Further, the Court notes that the documentary evidence available to the Court does not support Petitioner's assertion that he was not given *Miranda* warnings. The investigation report provided by the Government (ECF No. 16–2) indicated that Petitioner was given those warnings prior to each discussion with government agents about the apartment in this matter.  It additionally shows that Petitioner waived those rights, and that Petitioner signed both a form giving his consent to a search of the apartment during his first interaction with federal agents and a formal waiver of his *Miranda* rights during his second, more formal interview with federal agents.  Thus, the evidence that has been presented to this Court strongly suggests that any *Miranda* motion would lack merit.  Likewise, because drug paraphernalia was in plain view at the time federal agents arrived at the apartment, success on such a motion would have provided only little aid to Plaintiff.  Agents still would have had cause to search the apartment, and inevitably would have discovered the drugs regardless of Petitioner's involvement.  In any event, because Petitioner has failed to show what information an investigation into the *Miranda* issue would have provided, and because Petitioner has failed to show how such a motion would have truly altered the outcome of this matter, he has failed to show that he was prejudiced by counsel's alleged failure to pursue a *Miranda* motion.[3]

Petitioner's desire that counsel had investigated a late proposed "innocent landlord" defense likewise fails to state a valid basis for relief in this matter.  Petitioner cites to out of circuit caselaw for the proposition that a landlord can raise a defense based on the proposition that his ignorance of the use of his property for illegal purposes may *potentially* serve as a defense to

---

[3] Although the Court need not rely on it to reject Petitioner's *Miranda* related investigation claim, the Court further notes that in his certification, counsel contends that Petitioner sought a reduced sentence through cooperation from the outset. ECF No. 16–5 at ¶ 6 ("From the outset, Mr. Rodriguez agreed to cooperate even before I was involved, and after we spoke continued to express his eagerness to cooperate with law enforcement.").

10

charges based on his involvement in the drug activity conducted on his property. However, by Petitioner's own admission such a defense would largely depend on his not knowing about the drug activity, not being paid above market rent to turn a blind eye, and not having a duty to inquire into the use to which the property would be used. *See* ECF No. 1 at 9-10. Petitioner has provided no evidence to support the conclusion that counsel could have fashioned such a potential defense in this matter, but merely points to the vague possibility of an "innocent landlord" defense in support of his ineffective assistance claim.

Petitioner's failure to provide any concrete details, evidence, or even allegations of what would have been discovered is fatal to his ability to show prejudice. *Brown*, 2016 WL 1732377 at *4-5. This is especially true where, as here, Petitioner readily admitted to federal agents that he knew that the apartment was being used for drug activity. Petitioner admitted to this Court in pleading guilty that he knew of the secret compartment containing the firearm and additional drugs. The evidence provided to the Court, both in the form of Petitioner's solemn declarations to this Court, the evidence discovered in his apartment, and his admissions to law enforcement and probation officials during the drafting of his pre-sentence report, all clearly indicate that the apartment was Petitioner's, that he knew it was being used for drug purposes, and that he was at least to some extent involved in that drug activity. It is thus not persuasive to assert that further investigation *may* have shown him to have been a naïve landlord. In any event, Petitioner's failure to make a comprehensive showing of what additional information would have been produced by a more thorough investigation prevents him from being able to show he was prejudiced by counsel's alleged "failure" to investigate further, especially in light of the available evidence. Petitioner has thus failed to show a valid basis for relief, and his investigation claims are denied.

As all of Petitioner's claims are without merit, his motion to vacate his sentence (ECF No. 1) is denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's claims fail to set forth a valid basis for relief, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate his sentence (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

Date:  March 24, 2023

s/ Claire C. Cecchi
**Hon. Claire C. Cecchi, U.S.D.J.**